IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-000270-RBJ

CATHERINE M. BROWN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

## ORDER

---

This matter is before the Court on review of the Commissioner's decision denying plaintiff Catherine M. Brown's application for Disability Insurance Benefits pursuant to Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court on July 20, 2012 upon the expiration of time for Ms. Brown to file a reply brief. I apologize for the Court's delay in addressing this case.

**Facts**

Ms. Brown is a 48 year old college-educated woman who filed for disability insurance benefits on June 12, 2009, alleging a disability onset date of June 30, 2008. Ms. Brown worked as a missionary in Uzbekistan and most recently in Kyrgyzstan. She reports that in February 2008 she "fell apart," and following that, Ms. Brown and her husband came back to the United States. Ms. Brown filed for social security disability benefits alleging disability due to fibromyalgia, depression, post-traumatic stress disorder (PTSD), and sleep disorders. A hearing was held on September 14, 2010. The ALJ determined that Ms. Brown suffered from the

following severe impairments: fibromyalgia, depression, and obesity.  R. 18.  Using the five-step

sequential evaluation process established by the Social Security Administration, the ALJ

determined that Ms. Brown is not disabled and therefore not entitled to social security disability

insurance benefits.  Ms. Brown now appeals the ALJ's decision on two grounds: the ALJ failed

to articulate good reasons for rejecting the opinion of Ms. Brown's treating psychiatrist, and the

ALJ erred in ruling that Ms. Brown retains the mental residual functional capacity to perform

unskilled work.

Beginning in 2007, Ms. Brown reported symptoms of depression, and in February 2008

she "stopped functioning" and became suicidal.  R. 303, 305.  At that time, Ms. Brown left her

work as a missionary and came back to the United States.  *Id.*  Ms. Brown began seeing Dee

Martz, a licensed professional counselor.  When Ms. Martz first began seeing Ms. Brown in July

2008 she diagnosed her with Major Depressive Disorder.  R. 353.  However, by December 2009,

Ms. Martz adjusted her diagnosis down to a moderate level.  *Id.*  In a December 2009 report, Ms.

Martz explained that "[v]egetative signs were highly debilitative as we began treatment, but are

currently decreasing as she demonstrates better focus and function."  *Id.*  Ms. Martz concluded

by opining that "[s]ome days, I believe [Ms. Brown] could manage well in a flexible job setting.

Other days, her pain and accompanying hopelessness create significant impairment."  *Id.*

Ms. Martz referred Ms. Brown to a psychiatrist, Dr. McClure.  After the initial evaluation

on September 3, 2008, Dr. McClure reported that Ms. Brown exhibited a depressed mood and

affect, with lability into tears, that her memory and concentration were basically intact, that her

mental functioning was somewhat slowed, and that there was some psychomotor retardation.  R.

235.  Dr. McClure concluded that Ms. Brown met the criteria for Major Depression, recurrent of

severe intensity.  R. 236.

In December 2008 Dr. McClure completed an assessment of Ms. Brown.  R. 358-63.  The assessment consisted of Dr. McClure's checking boxes and did not have an accompanying narrative explanation.  In the assessment, Dr. McClure determined that Ms. Brown had marked or extreme limitations in several areas including restrictions of daily living, difficulties in maintaining social functioning, deficiencies in concentration, persistence, and pace, with three repeated episodes of decompensation.  *Id.*

Additional treatment notes from Dr. McClure are sparse.  At an appointment on August 31, 2009, Dr. McClure stated that Ms. Brown still had significant depression although it was much less but still disabling.  R. 364.  Next, on November 20, 2009, Dr. McClure noted that Ms. Brown's mood was much better, but that she still had stress and could not return to work.  *Id.*  He said that she was trying to get better but was still disabled.  *Id.*  On March 1, 2010 Dr. McClure noted that Ms. Brown was happier and was working at Kohl's Department Store fifteen hours per week.  On May 24, 2010 Dr. McClure noted that Ms. Brown was much better and happier but "still too weak to work more than 15 hours at [a] low stress job."  *Id.*

Ms. Brown was also evaluated by two consultative psychologists.  Alice Brill, Ph.D. completed a round of testing on June 22, 2009.  She completed an analysis form on November 13, 2009 and also submitted a narrative report.  R. 342-52.  Dr. Brill determined that Ms. Brown had marked limitations in activities of daily living.  R. 340-50.  Dr. Brill diagnosed Ms. Brown as suffering from severe psychological problems including psychotic thinking.  R. 352.  Dr. Brill assigned a GAF of 45.

Louis Hoffman, Ph. D. also evaluated Ms. Brown in September 2009.  Dr. Hoffman agreed that Ms. Brown exhibited signs of "fairly significant depression that appears to be . . . moderate to severe in nature."  R. 306.  Dr. Hoffman concluded that Ms. Brown's depression

would only mildly impact her social relationships including interactions with customers, peers, and supervisors; her concentration; her ability to adjust to change; and her ability to make work related decisions.  *Id.*  Dr. Hoffman determined that Ms. Brown's GAF score was 61.

Finally, a state agency psychological consultant also assessed Ms. Brown.  Mary Ann Wharry, Psy.D., did not examine Ms. Brown, but she assessed her mental state based upon Ms. Brown's statements in her disability report as well as treatment records and the report of Dr. Hoffman.  R. 317-40.  Dr. Wharry found that Ms. Brown was moderately limited in some areas such as the ability to interact appropriately with the general public and the ability to accept instructions and respond appropriately to criticism from instructors.  R. 332.  Dr. Wharry opined that Ms. Brown's symptoms could interfere with her ability to complete a normal workday or work week or could cause an inconsistent pace.  R. 333.  However, she determined that if the work did not involve tasks of more than limited complexity and attention to detail, Ms. Brown should be able to complete a normal workday and workweek.

### Administrative Law Judge's Opinion

In her opinion, Administrative Law Judge Kathryn D. Burgchardt, used the five step sequential evaluation process established by the Social Security Administration to determine that Ms. Brown is not disabled.  R. 33.  At step one, the ALJ found that Ms. Brown had not engaged in any substantial gainful activity since her alleged onset date of disability.  R. 18.  Although Ms. Brown began working at Kohl's Department store in March 2010, the 15 hours per week that she was working did not rise to the level of substantial gainful activity.  *Id.*  At step two the ALJ determined that Ms. Brown had three severe impairments: fibromyalgia, depression, and obesity.  *Id.*  At step three the ALJ found that Ms. Brown's impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  R. 19.  At this stage,

the ALJ gave "no weight" to Dr. McClure's opinion and "no weight" to Dr. Brill's opinion.  R. 21.

Before continuing to step four, the ALJ determined Ms. Brown's residual functional capacity (RFC).  The ALJ determined that Ms. Brown has the RFC to perform light work, including the ability to lift and carry 10 pounds frequently and 20 pounds occasionally and to perform push and pulling motions with her upper and lower extremities within the same weight restrictions.  The ALJ found that Ms. Brown was limited to standing or walking six hours in an eight hour work day, that she should not climb ladders, ropes, or scaffolds, and should avoid vibrations and avoid extreme cold.  Further, the ALJ limited Ms. Brown to simple, unskilled work involving one, two, or three step instructions that does not involve working in close proximity to co-workers, that she cannot function as a member of a team, and that she should have minimal direct contact with the public.  R. 21.  In determining this RFC, the ALJ described the opinions of Dr. McClure, Dr. Brill, Dr. Hoffman, and Dr. Wharry.  R. 25-29.  She did not discuss Ms. Martz's opinion.  The ALJ determined that Dr. Wharry's opinion was "representative of the claimant's true mental residual functional capacity" and accorded it "great weight."  R. 28.  The ALJ found Dr. Wharry's opinion to be "well supported by and consistent with the record as a whole."  *Id.*  The ALJ gave no weight to Dr. McClure's opinion or Dr. Brill's opinion.  R. 29-30.  The ALJ did not indicate what weight she gave to Dr. Hoffman's opinion.

At step four of the evaluation, the ALJ determined that based upon her RFC, Ms. Brown could not perform her previous relevant work as a missionary or acquisition manager.  R. 31.  At step five the ALJ determined that considering Ms. Brown's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could

perform.  R. 32.  In arriving at this conclusion, the ALJ relied on the testimony of a vocational

expert and the Dictionary of Occupational Titles.  *Id.*

### Standard of Review

This appeal is based upon the administrative record and briefs submitted by the parties.

In reviewing a final decision by the Commissioner, the role of the District Court is to examine

the record and determine whether it "contains substantial evidence to support the Secretary's

decision and whether the Secretary applied the correct legal standards."  *Rickets v. Apfel*, 16

F.Supp.2d 1280, 1287 (D. Colo. 1998).  A decision cannot be based on substantial evidence if "it

is overwhelmed by other evidence in the record. . . ."  *Bernal v. Bowen,* 851 F.2d 297, 299 (10th

Cir. 1988).  Substantial evidence requires "more than a scintilla, but less than a preponderance."

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007).  Evidence is not substantial if it

"constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

### Conclusions

In her appeal, Ms. Brown raises two issues.  First, she argues that the ALJ failed to

articulate good reasons for rejecting the opinion statement of Ms. Brown's treating psychiatrist,

Dr. McClure.  Second, Ms. Brown argues that the ALJ erred in ruling that Ms. Brown retains the

mental residual functional capacity to perform unskilled work.

<u>Dr. McClure's Opinion</u>

Treating physicians' opinions are generally given controlling weight.  *Watkins v.*

*Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).  "The treating physician's opinion is given

particular weight because of his unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone or from reports of individual examinations,

such as consultative examinations or brief hospitalizations."  *Doyal v. Barnhart*, 331 F.3d 758,

762 (10th Cir. 2003).  Because of the importance of the treating physician's opinion, a two-step

sequential analysis is used.  *Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir. 2004)

(quoting *Watkins,* 350 F.3d at 1300) (internal citations omitted).  First, the ALJ must consider

whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic

techniques.  *Id.*  If the opinion is supported, then the ALJ must confirm that the opinion is

consistent with other substantial evidence in the record.  *Id.*  If the opinion is deficient in either

of these respects, it is not entitled to controlling weight.  *Id.*  Even if the ALJ determines that a

treating physician's opinion is not entitled to controlling weight, "treating source medical

opinions are still entitled to deference and must be weighted using all of the factors provided in

20 C.F.R. §§ 404.1527 and 416.927."  *Id.*

"In choosing to reject the treating physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's opinion

outright only on the basis of contradictory medical evidence and not due to his or her own

credibility judgments, speculation or lay opinion."  *McGoffin v. Barnhart,* 288 F.3d 1248, 1252

(10th Cir. 2002).  In her opinion, the ALJ provided a lengthy explanation as to why she accorded

Dr. McClure's opinion no weight.  Among the reasons cited, the ALJ indicated that Dr.

McClure's own treatment notes reflect only periodic visits for medication management, that he

relied heavily on the subjective reporting of symptoms and limitations provided by Ms. Brown

and he accepted them uncritically as true, that he provided "check the box" type answers on the

form used to complete his mental residual functional capacity assessment with no accompanying

narration, and that there was a lack of objective support or clinical findings.  R. 29.

Although the ALJ provided specific reasons for according Dr. McClure's opinion no

weight, her explanation does not adequately explain how the medical evidence outweighed Dr.

McClure's opinion.  There were four medical opinions assessing Ms. Brown's mental status: the treating physician Dr. McClure, two examining consultative opinions from Dr. Hoffman and Dr. Brill, and a non-examining consultative opinion from Dr. Wharry.  Further, there was an opinion from Ms. Martz, Ms. Brown's counselor.  Dr. McClure's opinion was given no weight, Dr. Brill's opinion was given no weight, the ALJ did not specify what weight, if any, that was accorded Dr. Hoffman's opinion, Dr. Wharry's opinion was given great weight, and Ms. Martz's opinion was not discussed.

"The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they 'outweigh' the treating physician's report, not the other way around." *Gotacher v. U.S. Dept. Health and Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988)).  The ALJ's opinion does the opposite of this.  The agency psychologist's opinion was given great weight, while the opinions of the treating physiatrist and examining consultative physiatrist were given no weight.  It was also not clear that the ALJ analyzed the non-treating opinions to see if they outweighed Dr. McClure's opinion and not the other way around.  Ms. Martz's opinion, which was consistent with Dr. McClure's opinion in many respects, was not discussed at all.  As a licensed professional counselor, Ms. Martz is not an acceptable medical source.  However, "[o]pinions from . . . medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Martinez v.*

*Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011) (quoting SSR 03-06p).  Dr. Wharry's opinion alone cannot justify ignoring the four other opinions describing Ms. Brown's mental state.

I agree with the ALJ that the information provided by Dr. McClure was sparse. However, as the treating physician, the ALJ had an obligation to develop the record.  "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A remand is needed so that the ALJ can, if possible, further develop the record, and provide additional explanation as to the weight assigned Ms. Brown's treating and consultative psychologists.

<u>Mental Residual Functional Capacity to Perform Unskilled Work</u>

Ms. Brown also argues that the ALJ erred in ruling that Ms. Brown retains the mental residual functional capacity to perform unskilled work.  In support of this argument, Ms. Brown explains that by determining that Ms. Brown can perform unskilled work, the RFC did not identify Ms. Brown's limitations in performing mental activities.  I disagree.  The ALJ determined that Ms. Brown could perform unskilled work and then went on to describe additional limitations on the type of work that Ms. Brown could perform based upon her mental limitations.  The ALJ limited Ms. Brown to unskilled work that involves no more than three-step instructions, does not involve working in close proximity to co-workers or as a member of a team, and that involves only minimal direct contact with the public.  R. 21.  When the ALJ posed the hypothetical to the vocational expert, she included all of these limitations, and the vocational expert considered them in her determination that there was work available to Ms. Brown.  R. 63. Because the ALJ included limitations caused by Ms. Brown's mental impairments in

constructing both the RFC and the hypotheticals presented to the vocational expert, the ALJ did not err.

**Order**

The decision of the ALJ is reversed.  The case is remanded to the Commissioner for proceedings consistent with this order, namely that she more fully explain the weight accorded medical source opinions.

DATED this 11th day of March, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge